UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10198-GAO

GAIL MELLO,
Plaintiff,
v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security Administration,
Defendant.

OPINION AND ORDER
March 25, 2014

O'TOOLE, D.J.

## I.     Introduction

The plaintiff, Gail Mello, appeals the denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits by the Commissioner of the Social Security Administration ("Commissioner"). Mello applied for DIB and SSI benefits on January 22, 2009, claiming disability since September 1, 2006. (Administrative Tr. at 225, 232 [hereinafter R.].)[1] Mello's application was denied at its initial level of review on July 9, 2009. (Id. at 106-11.) Following Mello's request for reconsideration of the evidence in her case, Social Security Administration Regional Commissioner Manuel J. Vaz notified Mello on February 4, 2010 that the initial denial of her application was affirmed. (Id. at 114-19.)

Mello timely filed a written request for a hearing before an Administrative Law Judge ("ALJ") on March 17, 2010. (Id. at 120.) The hearing before ALJ Alan Mackay was held on April 29, 2011. (Id. at 33-53.) Mello was represented by attorney Jeff B. Gomes at the hearing, at which Mello provided oral testimony. (Id.) On May 6, 2011, ALJ Mackay issued a written

---

[1] The administrative record has been filed electronically (dkt. no. 8). In its original paper form, its pages are numbered in the lower right-hand corner of each page. Citations to the record are to the pages as originally numbered, rather than to numbering supplied by the electronic docket.

Decision that was unfavorable to Mello, finding that Mello was not disabled from her alleged onset date of disability through the date of his Decision. (Id. at 83-95.) Mello's case was selected for review by the Decision Review Board. (Id. at 83-85.) But due to changes in agency rules, the case was subsequently transferred to the Appeals Council. (Id. at 168-70.) On September 21, 2011, the Appeals Council remanded the case to the ALJ for a new hearing. (Id. at 101-04.) The new hearing was held on February 6, 2012, with the plaintiff again testifying, along with her husband and a vocational expert. (Id. at 54-78.) The ALJ's second Decision was again unfavorable, finding that Mello was not disabled from her alleged onset date of disability through the date of the ALJ's Decision. (Id. at 11-26.) The Appeals Council denied Mello's request for review on December 17, 2012. (Id. at 1-6.)

Before the Court is Mello's Motion for Judgment reversing the Commissioner's decision (dkt. no. 9), and alternatively the Commissioner's Motion to Affirm the Decision (dkt. no. 11). The Court now affirms the Commissioner's Decision because there is substantial evidence in the administrative record to support it, and no error of law was made.

## II. Background

Mello was 46 years old when she applied for DIB benefits and SSI benefits. (Id. at 24.) She has a high school education and some college attendance but no degree. (Id.) Before the alleged onset of disability on September 1, 2006, Mello worked as a personal care attendant. (Id. at 58.) Mello describes her disability as "degenerative disc, arthritis, neck, shoulder, depression, PTSD." (Id. at 252.) At the time of her hearing, she also alleged fibromyalgia as a disabling condition.

### A. Medical History

For present purposes, Mello alleges severe physical and mental impairments, consisting principally of fibromyalgia and depressive disorder, which disable her both from her past relevant work and from other work in the national economy. (Id. at 19.) At the hearing, she testified that she spends all day in bed and has difficulty with activities of daily living due to pain issues, and that treatment has failed to resolve these issues. (Id.) Treatment has been provided in the past by various doctors. Magnetic resonance imaging showed degenerative disc disease. (Id. at 523.) Treatment for this pain was provided by Dr. Scott Henderson through medication and patches. (Id. at 600-70.) Mello had numerous visits with Dr. Henderson, and he observed noncompliance with her prescribed treatments, as well as inconsistent behavior with her alleged symptoms. (Id.) Dr. Henderson saw no consistent physical or radiographic findings to support Mello's claims and suspected a functional/psychological component. (Id.) In November 2011, Dr. Henderson completed a Medical Source Statement, outlining his assessment of limitations due to her conditions. He indicated that she could lift 10 pounds only occasionally, sit only for two hours at a time in an eight-hour workday, and other limitations (Id. at 785-90.) Nonetheless, he also assessed that she could perform activities like shopping, travel without a companion for assistance, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed herself, care for her personal hygiene, and sort, handle, or use paper files. (Id. at 790.)

Dr. Mohammad Munir treated Mello for mental health issues, including depression, post traumatic stress disorder, and anxiety. (Id. at 741-45.) Dr. Munir found her associations, cognitive functioning, insight, and judgment to be intact, with appropriate thought content and logical thinking. He also found no signs of depression or manic process. (Id. at 743-44.)

Dr. John P. Hennessey provided a consultative mental evaluation, finding moderate depressive disorder, moderate generalized anxiety disorder, and a personality disorder. (Id. at 443.) But her insight, judgment, attention span, and concentration were found to be adequate. (Id.)

Mello's records were reviewed by Dr. John Jao, a medical consultant. (Id. at 591-98.) Dr. Jao found a limited ability to perform light level work, with limitations and restrictions. (Id. at 592-93.) Dr. Jao also found Mello's complaints to be only partially credible, being out of proportion with the objective medical findings. (Id. at 593.)

### B. The ALJ's Decision

The ALJ's opinion tracked the five-step sequential evaluation process mandated by 20 C.F.R. §§ 404.405(a) and 416.920(a) to determine whether Mello was disabled. (Id. at 11-32.) Each step is potentially dispositive; if the claimant is determined disabled (or not disabled) at any step, the inquiry proceeds no further. 20 C.F.R. § 404.1520. In Mello's case, ALJ Mackay determined that Mello was not disabled at step five. (R. at 25.)

The first step requires determining whether Mello is engaged in substantial gainful work activity. (Id. at 15 (citing 20 C.F.R. § 404.1520).) ALJ Mackay determined that Mello had not engaged in "substantial gainful activity" since the alleged onset of her disability on September 1, 2006. (Id. at 17.)

At the second step, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment" that also meets the duration requirements. 20 C.F.R. § 404.1520. The ALJ found that Mello had two severe impairments: "fibromyalgia and depressive disorder (20 C.F.R. 404.1520(c) and 416.920(c))." (R. at 17.)

At step three, the ALJ must determine the severity of the alleged impairment and whether the claimant's impairment meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ found that Mello's impairments or combination of impairments did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 17.)

Before reaching step four, the ALJ must first assess the claimant's Residual Functional Capacity[2] ("RFC"). The ALJ found that Mello had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1546(b) and 416.967(b), with some limitations, including being "limited to occasionally reaching overhead bilaterally; occasionally climbing, stooping, kneeling, crouching, and crawling; understanding and remembering short and simple instructions; carrying out 1-2 step instructions; maintaining attention for 2-hour intervals and completing a normal work week at a sufficient pace; being socially appropriate; and adapting to minor changes in the work place." (Id. at 18.)

At step four, the claimant's RFC is compared with past relevant work to determine if the claimant is able to resume that work. 20 C.F.R. § 1520(a)(4)(iv). If the claimant is able to resume past relevant work, she is determined to be not disabled. Id. If the claimant is not able to resume past relevant work, the inquiry proceeds to the fifth step. Id. Vocational expert Ruth Farook was asked to evaluate Mello's past relevant work, age, education, and RFC. (R. at 69-73.) Farook indicated that Mello's past work as a personal care attendant[3] required the ability to perform medium or heavy levels of exertion. (Id. at 70.) Consistent with this opinion, the ALJ found that Mello was unable to perform her past relevant work. (Id. at 24.)

---

[2] The determination of a claimant's residual functional capacity will be based on "all the relevant medical and other evidence in [claimant's] case record, as explained in 20 C.F.R. § 404.1545." 20 C.F.R. § 404.1520(e).

[3] DOT No. 354.377-014 (Id. at 24, 70.)

5

At the fifth and final step, the claimant's RFC, age, education, and work experience are considered to determine if she is capable of performing other work presently available in the national and regional economy. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, and such other work is sufficiently available in the national and regional economy, the appropriate finding is "not disabled." Id.

Farook testified that a number of jobs in the national economy existed for someone with Mello's age, education, work experience, and RFC. (R. at 70-72.) The ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id. at 25.) The ALJ accepted Farook's testimony that Mello would be able to perform the representative occupations such hand packer,[4] electronic worker,[5] and mail sorter.[6] (Id. at 25.)

### III. Standard of Review

When reviewing a denial of DIB and SSI benefits, the Court will uphold the ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence exists, and the ALJ's findings must be upheld, if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st. Cir. 1991) (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). The ALJ's conclusion must be upheld when supported by substantial evidence, even

---

[4] DOT No. 559.687-074; 410,750 such jobs in the national economy, and 6,950 such jobs in Massachusetts. (Id. at 25, 71.)
[5] DOT No. 726.687-010; 239,550 such jobs in the national economy, and 2,210 such jobs in Massachusetts. (Id. at 25, 71-72.)
[6] DOT No. 209.687-026; 131,350 such jobs in the national economy, and 3,680 such jobs in Massachusetts. (Id. at 25, 72.)

6

if the record could "arguably justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Deciding upon issues of credibility is the "prime responsibility" of the ALJ. Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). The ALJ may rely on the opinions and findings of multiple physicians to ascertain the pertinent medical facts. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). 20 C.F.R. § 416.927(e)(1) vests the ALJ with the responsibility to draw the ultimate conclusion as to whether the applicant is disabled.

## IV. Discussion

### A. Step Three Evaluation

Mello asserts that the ALJ erred at step three in concluding that she does not have an impairment that meets or medically equals the severity of one of the listed impairments. To the contrary, there is substantial support in the record for the ALJ's conclusion. The ALJ found that Mello's mental impairment did not satisfy the paragraph B criteria of listing 12.04. (R. at 18.) Supporting this was evidence that showed only a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no evidence of episodes of decompensation of extended duration. (Id. at 17-18.) To satisfy the "paragraph B" criteria, the mental impairment must have resulted in at least two "marked" limitations, or a combination of a "marked" impairment with evidence of episodes of decompensation. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. These criteria are not established in the record. Thus the ALJ's conclusion that Mello's impairments, both singly and in combination, do not meet or equal the severity of any impairment listed was adequately supported.

7

B.  Plaintiff's Credibility

Mello claims the ALJ erred in assessing her credibility. As noted above, assessments of credibility are the "prime responsibility" of the ALJ. Rodriguez, 349 F.2d at 496. "The credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 194-95 (1st Cir. 1987).

The ALJ found inconsistencies between the objective medical evidence and Mello's own activities. (R. at 20.) In particular, the ALJ cited Dr. Henderson's notes that indicated his skepticism about her subjective complaints. (Id. at 20, 22.) For example, Dr. Henderson noted on a visit on April 20, 2011 that Mello's presentation was "theatrical." (Id. at 771.) He also noted that while he recognized that she had chronic pain, she also had walked normally into the office that day. (Id.) On a prior visit on January 20, 2011, Dr. Henderson noted that Mello complained of "multiple symptoms but [there was] no consistent physical and radiographic findings to support underlying diagnosis," and that he suspected a significant functional or psychological component. (Id. at 601.) On October 10, 2010, Dr. Henderson noted that despite her complaints, "when she became agitated she moved [quickly from] exam table to sitting up to walking without any hesitation [or] appearance of discomfort." (Id. at 602.) He further noted, "Story continues to change." (Id.)

Other examiners also expressed doubts about the credibility of her claimed symptoms. Dr. Jao noted:

> She has chronic pain from cervical and lumbar sponylosis. There is no objective evidence for radiculopathy either by exam or by EMG. EMG did show some non-specific changes consistent with some form of peripheral neuropathy. On exam,

> she has adequate range of motion of neck and lumbar spine in spite of her protests
> of having pain. . . . Partially credible, pain out of proportion to objective findings.

(Id. at 592-93.) Similarly, in an assessment done by Dr. Weeratne in April 2009, the examiner noted: "Claimant appears to be partially credible, as her alleged physical limitations, are not fully supported by the MER." (Id. at 433.)

The ALJ's unwillingness to accept Mello's testimony at face value was a skepticism shared by multiple examiners as noted in the record. There was no reversible error in his making that judgment.

### C. Residual Functional Capacity

Mello further claims the ALJ's findings regarding her RFC were not based on substantial evidence. The ALJ may rely on the opinions and findings of multiple physicians to ascertain the pertinent medical facts. See Evangelista, 826 F.2d at 144. The ALJ found the opinions of Dr. Jao and Dr. Langer to be consistent with the objective medical evidence as well as Mello's own testimony, and thus they were given significant weight. (R. at 24.) Specifically, the ALJ accepted Dr. Jao's findings that Mello could still perform a light level of work despite her impairments, limited to two hours of standing per eight-hour workday and with other limitations and restrictions. (Id. at 23, 581-588.) The ALJ also accepted Dr. Langer's opinion, who concluded that Mello had moderate mental work-related functional limitations but could still perform simple, unskilled work. (Id. at 24.) These opinions constitute substantial evidence to support the ALJ's RFC conclusion. Mello's principal complaint is that the ALJ accepted the Jao and Langer assessments over the functional assessment done by Dr. Henderson, who had treated Mello over a number of years. It is true that ordinarily the opinion of a treating physician is to be given careful consideration. See 20 C.F.R. § 404.1527(d)(2); but see Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 700 n.7 (1st Cir. 2007) ("[N]o deference is given to a [treating]

physician's opinion that a claimant is disabled or unable to work because that is not a medical opinion.") (citing 20 C.F.R. § 404.1527(e)(1)). In this instance, there was a reason for the ALJ not to give weight to Dr. Henderson's functional assessment. Not only was it at odds with the other assessments, it was also internally inconsistent. While Dr. Henderson noted in the first part of the statement Mello's limitations regarding lifting/carrying, sitting/standing/walking, use of hands, use of feet, and postural activities (R. at 785-88), when asked to assess the impact of her physical impairments on activities of daily living, he opined that she was able to perform such activities as shopping, traveling alone, traveling on public transportation, going up stairs, preparing meals, grooming, and handling papers and files. (Id. at 790.) Given the ambiguity of this assessment, it was not error for the ALJ to give greater weight to the other RFC assessments.

D.   Age Categorization

Mello was born in June 1960. At the time of the hearing she was 51 years old. The vocational expert provided testimony based upon a hypothetical question positing an individual with age range of 46-51. (Id. at 70-72.) Accordingly, Mello's age was accurately characterized in the hypothetical scenario posed to the vocational expert. There was no error. See Garay v. Sec'y of Health & Human Servs., 46 F.3d 1114, at *2 (1st Cir. 1995) (unpublished table decision) (citing Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982)).

E.   Step Five Evaluation

Mello also claims error in the step five determinations by the ALJ. A vocational expert's testimony concerning the existence of jobs constitutes substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC. See Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994); Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). The ALJ formulated his hypothetical question to the vocational expert

based upon his findings as to Mello's RFC. (R. at 25, 70-72.) Though he posed alternate hypotheticals based upon Dr. Henderson's and Mello's own testimony about her restrictions, he was not bound to rely on answers to those questions where his findings about subsidiary assumptions were inconsistent with the hypothetical formulation. Based on the testimony he found credible and other substantial evidence in the record, the finding that Mello was not disabled from available work was one adequately supported by substantial evidence.

## V. Conclusion

For the foregoing reasons, the plaintiff's Motion for Judgment to reverse the Commissioner's Decision (dkt. no. 9) is DENIED, and the defendant's Motion to Affirm the Commissioner's Decision (dkt. no. 11) is GRANTED. The Decision is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge